| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | FOR PUBLICATION |
| SOUTHERN DISTRICT OF NEW YORK | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU GROUP, LLC, *et al.*, | Case No. 06 B 22306 (ASH) |
| Debtors. | Jointly Administered |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. | Adv. Proc. No. 06-08318A |
| Bayou No Leverage Fund, LLC v. Christian Brothers H.S. Endowment | Adv. Proc. No. 06-08320A |
| Bayou Superfund, LLC v. D. Canale Beverages, Inc. | Adv. Proc. No. 06-08321A |
| Bayou No Leverage Fund, LLC v. Fred Montesi IRA and Fred Montesi | Adv. Proc. No. 06-08329A |
| Bayou Superfund, LLC v. Helen Yulman Revocable Trust | Adv. Proc. No. 06-08332A |
| Bayou Superfund, LLC v. Heritage Hedged Equity Fund LP | Adv. Proc. No. 06-08333A |
| Bayou Superfund, LLC v. John D. Canale III | Adv. Proc. No. 06-08336A |
| Bayou Superfund, LLC v. KFI Capital Partners LLC | Adv. Proc. No. 06-08337A |
| Bayou Superfund, LLC v. Mary P. Smythe Residuary Trust | Adv. Proc. No. 06-08338A |
| Bayou No Leverage Fund, LLC v. Mayer and Morris Kaplan Foundation | Adv. Proc. No. 06-08340A |
| Bayou Superfund, LLC v. YK Investment Partnership II | Adv. Proc. No. 06-08341A |
| Bayou Superfund, LLC v. Marvin E. Bruce Living Trust | Adv. Proc. No. 06-08368A |
| Bayou Superfund, LLC v. Singer 1995 Family Trust | Adv. Proc. No. 06-08371A |
| Bayou Accredited Fund, LLC v. Freestone Low Volatility Partners LP | Adv. Proc. No. 06-08373A |
| Bayou Superfund, LLC v. Randall M. Rothstein and Sheryl B. Rothstein | Adv. Proc. No. 06-08389A |
| Bayou Accredited Fund, LLC v. Steven R. Selcer | Adv. Proc. No. 06-08401A |
| Bayou Accredited Fund, LLC v. Madison Capital Advisors Ltd. | Adv. Proc. No. 06-08403A |
| Bayou Accredited Fund, LLC v. Ciconia & Co., LLC | Adv. Proc. No. 06-08411A |
| Bayou Superfund, LLC v. Myrna Bennett | Adv. Proc. No. 06-08420A |
| Bayou Superfund, LLC v. H & B Hedge Fund II LLC | Adv. Proc. No. 06-08422A |
| Bayou No Leverage Fund, LLC v. Marc Fleisher IRA and Marc Fleisher | Adv. Proc. No. 06-08423A |
| Bayou Superfund, LLC v. Kevin Bass | Adv. Proc. No. 06-08431A |
| Bayou Superfund, LLC v. Michael Davidson | Adv. Proc. No. 06-08435A |
| Bayou No Leverage Fund, LLC v. John Barr III IRA and John Barr III | Adv. Proc. No. 07-08244A |

**A P P E A R A N C E S :**

H. Jeffrey Schwartz, Esq.
Gary J. Mennitt, Esq. (Argued)
Elise Scherr Frejka, Esq.
Jonathan D. Perry, Esq.
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112-2200
*Attorneys for the Debtors and Debtors-in-Possession*

Richard A. Kirby, Esq. (Argued)
Philip M. Guess, Esq.
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
1601 K Street, N.W.
Washington, DC 20006-1600
*Attorneys for the Official Unsecured Creditors' Committee*

Carole Neville, Esq. (Argued)
Arthur H. Ruegger, Esq.
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, NY 10020-1089
*Attorneys for the Sonnenschein Defendants*

Bonnie Steingart, Esq. (Argued)
Kalman Ochs, Esq.
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, NY 10004
*Attorneys for the Fried Frank Defendants*

Philip Bentley, Esq. (Argued)
Jonathan T. Koevary, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
*Attorneys for the Kramer Levin Defendants*

M. William Munno, Esq. (Argued)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
*Attorneys for Mary Jane Pidgeon Sledge*

Joseph W. Allen, Esq. (Argued)
JAECKLE FLEISCHMANN & MUGEL, LLP
12 Fountain Plaza
Buffalo, NY 14202-2292
*Attorneys for Christian Brothers High School Endowment*

Richard B. Feldman, Esq. (Argued)
Stephen M. Rosenberg, Esq.
ROSENBERG FELDMAN SMITH, LLP
551 Fifth Avenue, 24th Floor
New York, NY 10176
*Attorneys for Freestone Low Volatility Partners, LP*

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

### DECISION DENYING MOTIONS FOR SUMMARY JUDGMENT

Before the Court for this decision are self-styled motions for summary judgment filed by defendants in twenty-four out of some 110 adversary proceedings. The adversary proceedings were commenced by debtors-plaintiffs to recover alleged fraudulent conveyances under Sections 544 and 548 of the Bankruptcy Code and Sections 273 through 276 of the New York Debtor & Creditor Law ("DCL").

The plaintiffs in these twenty-four adversary proceedings (Bayou Superfund, LLC, Bayou No Leverage Fund, LLC and Bayou Accredited Fund, LLC) are three hedge funds organized in 2003 (collectively, the "Bayou Hedge Funds" or, together with other Bayou-related entities, the "Bayou

Entities"). The defendants are persons and entities who invested in the Bayou Hedge Funds. The gravamen of the amended complaints is that the Bayou Entities including the Bayou Hedge Funds were operated by their pre-petition principals as a "massive Ponzi scheme." It is alleged that the Bayou Hedge Funds sustained consistent losses from their inception and that the pre-petition principals of the Funds misappropriated substantial sums from the Funds. To deceive existing and future investors and the regulators, the pre-petition principals of the Bayou Hedge Funds caused the Funds to publish fraudulent financial statements reporting substantial but entirely fictitious profits, certified by a purportedly independent but non-existent accounting firm.

To avoid detection of the fraud, to retain existing investors and to lure new investors, the Bayou Hedge Funds invariably honored requests by investors who sought to exercise their contractual right to redeem their investments as falsely reported in the fraudulent financials, both as to impaired or non-existent principal and fictitious profits. These redemption payments thus constituted an integral and essential element of the alleged fraud, necessary to validate the false financials and to avoid disclosure.

As alleged in the complaints in all 110 adversary proceedings, all investors in the Bayou Hedge Funds were fraudulently induced to invest in the Funds and were, therefore, victims of the fraud. The contest in these adversary proceedings pits the interests of the investors who did not receive payments in redemption of their Bayou investments ("non-redeeming investors") against the conflicting interests of the investors who received payments in redemption of their investments ("redeeming investors") who are the defendants in the adversary proceedings. The alleged fraudulent conveyances sought to be recovered are payments to the defendant-redeeming investors of "non-existent principal and fictitious profits" in redemption of defendants' purported but non-existent interests in the Bayou Hedge Funds as reflected in the Funds' false financial reports.

**The Prior Motions to Dismiss**

The movants in the instant motions for summary judgment (hereinafter the "defendants") were among the defendants in ninety-five of the adversary proceedings which previously filed motions to

dismiss. Those motions to dismiss were denied in a decision dated February 23, 2007 reported as *In re Bayou Group, LLC, et al.*, 362 B.R. 624 (Bankr. S.D.N.Y. 2007) (the "February 23 Decision").

Although denominated motions for summary judgment, these contested matters are in substance and effect also motions to dismiss based upon the asserted legal insufficiency of the complaints, rather than upon uncontested facts outside of the complaints. The defendants' arguments here could and should have been asserted in the prior motions to dismiss.

To avoid unnecessary repetition, the February 23 Decision is incorporated by reference as if set forth herein in its entirety. This decision presumes familiarity with the February 23 Decision.

### Jurisdiction

This Court has jurisdiction over these core proceedings under 28 U.S.C. §§ 1334(b) and 157(a) and (b)(2) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by Acting Chief Judge Robert J. Ward.

### Defendants' Arguments for Dismissal

The defendants rely upon a simple syllogism in support of their demand for dismissal. The argument is as follows.[1]

Point I.

Fraudulent transfer claims can only be brought for the benefit of creditors — not equity holders — and only to the extent necessary to satisfy such creditors.

Point II.

The non-redeeming investors in the Bayou Funds do not qualify as creditors eligible to support the debtors' fraudulent transfer claims.

Since the claims of non-investor creditors are *de minimis* or nil, defendants argue that all of the adversary proceedings must be dismissed because there is no creditor constituency for whose benefit the fraudulent conveyance claims can be asserted as a matter of law.

---

[1] Quotations are from the point headings in defendants' brief.

In addition, defendants argue that these adversary proceedings must be dismissed as a matter of law under Section 510(b) of the Bankruptcy Code. They argue:

Point III.

All claims by Bayou investors to recover for losses in their investments must be treated as equal or subordinate to equity interests pursuant to 11 U.S.C. § 510(b), and cannot support fraudulent transfer claims.

## Discussion

### A.    The argument that the non-redeeming investors are not creditors

Section 548(a)(1)(A) refers to the debtors' intent to hinder, delay or defraud "any entity to which the debtor was or became . . . indebted," *i.e.*, any present or future creditor. The DCL refers in its several provisions relating to fraudulent conveyance to conveyances "fraudulent as to creditors" or "fraudulent as to both present and future creditors." The statutory language, both federal and state, and the case law make clear that fraudulent conveyance claims under Sections 544 and 548 of the Bankruptcy Code and Sections 273 *et seq.* of the DCL may be brought by or on behalf of the debtor for the benefit of creditors. It is *not* clear that fraudulent conveyance claims can *never* be brought in whole or in part to benefit equity, as argued in point I of defendants' syllogism.[2]    But this controversial issue need not be addressed in this decision. The patent and uncontroversial defect in defendants' argument is the premise of point II that non-redeeming investors in the debtors are not creditors of the debtors.

It may well be that under Delaware law and the controlling agreements governing their investments in the Bayou Hedge Funds, the non-redeeming investors were and are deemed to be equity holders in the Bayou Hedge Funds. Of course, defendants overlook one respect in which Bayou Hedge

---

[2]    In most cases, from the perspective of Bankruptcy Code objectives, it makes sense to say that fraudulent conveyance claims may be asserted only to the extent necessary to benefit creditors, as opposed to the debtor and the debtor's equity. But I decline to embrace an all-encompassing bright line rule holding that a fraudulent conveyance claim can never be brought to benefit equity. It is not difficult to imagine circumstances where stockholders or "equity" (such as the non-redeeming investors here) have no knowledge of, responsibility for or timely capacity to deter a fraudulent scheme by rogue management and suffer precisely the same harm as creditors of a corporate entity which has been victimized by the scheme. In such a case, permitting a debtor-in-possession or Chapter 11 or Chapter 7 trustee to assert fraudulent conveyance claims for the benefit of innocent equity investors, as well as creditors, would not offend any statutory language and would serve Bankruptcy Code objectives.

Fund investors were different from shareholders in an ordinary stock corporation. Shareholders in an ordinary stock corporation generally do not have a contractual right to redeem their investments in the corporate entity, whereas investors in the Bayou Hedge Funds had a contractual right of redemption of their investments and any accumulated profits. The difference is significant because the Bayou Hedge Fund investor had a contractual right of redemption, and a party with a contract claim against a debtor is a creditor of the debtor. Of course, the non-redeeming investors' claims against the Bayou Hedge Funds as creditors in respect of their contract claims for redemption of their investments may be worth little or nothing to the extent that, as alleged, the principal investments of all investors had been reduced by trading losses and the depredations of the prior principals of the debtors.

But the premise of the amended complaints in these adversary proceedings is that the investors in the Bayou Hedge Funds were not merely contract claimants, but tort claimants as well. It is alleged that all of the Bayou Hedge Fund investors were fraudulently induced to purchase their investments in the Funds by the fraudulent financial statements certified by the non-existent accounting firm. To quote defendants (Brief at 5), "as everyone concedes, [the non-redeeming investors] had the right prior to the filing of the petition to pursue claims for damages or rescission against the Bayou Hedge Funds." On this premise, all of the non-redeeming investors have tort claims against the debtors for rescission or damages for the entire amount of their principal investments in the Funds. As tort claimants, there can be no doubt that the non-redeeming investors are creditors of the debtors. *See Dillon v. Axxsys Int'l, Inc.*, 185 Fed. Appx. 823, 830 (11th Cir. 2006) (finding plaintiffs who were fraudulently induced into investing to be "creditors" of a corporation by virtue of having "claims" against it); *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995 ) ("[D]efrauded investors . . . are tort creditors."); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428 (S.D.N.Y. 2006) ("[Limited partner-investors] here are tort creditors of the Partnership by virtue of their claims against the defrauding defendants."); *In re Independent Clearing House Co.*, 77 B.R. 843, 857 (D. Utah 1987) (Ponzi scheme investors "had a claim against the debtors for the return of [their] money."); *see also IDS Holding Co. v. Madsen* (*In re IDS Holding Co.*), 292 B.R. 233, 238 (Bankr. D. Conn. 2003) ("[I]n addition to being an equity security holder . . . '[t]here is no provision in the

Bankruptcy Code that a limited partner . . . cannot also have an independent claim within the definition of 101(4) arising out of the same instrument.'") (quoting *In re St. Charles Pres. Investors, Ltd.*, 112 B.R. 469, 474 (D.D.C. 1990) (It cannot be shown that "the definitions of 'creditor' and 'equity security holder' are mutually exclusive.")).

Accordingly, even assuming (without deciding) that as a general proposition fraudulent conveyance claims may not be asserted by or on behalf of a debtor for the sole or partial benefit of equity investors in the debtor, these adversary proceedings may be prosecuted for the benefit of the non-redeeming investors because such investors are indubitably creditors of the plaintiff Bayou Hedge Funds to the extent of the entirety of their unredeemed investments in the Funds by reason of their tort claims for rescission or damages for fraudulent inducement.

**B.**     **Defendants' argument under 11 U.S.C. § 510(b)**

Section 510(b) of the Bankruptcy Code provides as follows:

> (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

In the context of this contested matter, the key words in Section 510(b) are the first clause "For the purpose of distribution under this title." The provision governs only the question of priority among claims "[f]or the purpose of distribution" — Section 510(b) does *not* deal with allowance or disallowance of claims. Indeed, the statute expressly deals with claims which *are* "allowed under section 502," and the last clause expressly states that "such [subordinated] claim" remains a "claim" (*i.e.*, is *not* disallowed) with "the same priority as common stock." The statute simply provides that a tort claim for rescission or damages arising from purchase, retention or (broadly stated under the case law) ownership of common stock or other equity security shall have no greater priority for distribution purposes than that of the underlying stock or equity interest in question and, therefore, will be subordinated to any creditor

interest which has a higher priority under the Bankruptcy Code than that of the underlying stock or equity interest.

Section 510(b) is applicable in this case to the extent that any creditor claims not arising from an investment interest in the Bayou Hedge Funds must be paid in full before any distribution can be made in these Chapter 11 proceedings to any non-redeeming investor/creditor based on the investor/creditor's tort claim for rescission or damages.

The defendants' argument based on Section 510(b) is precisely encapsulated in the following quotation (Brief at 28):

> The first clear, direct effect of subordination to the level of equity holder in an insolvent estate is disallowance of the claim — no distribution or recovery.

This statement of law is utterly without foundation. Nothing in Section 510(b) or any other provision of the Bankruptcy Code supports the conclusion that the effect of subordination under Section 510(b) is disallowance of a claim. It bears repeating that Section 510(b) does not deal with the question of allowance or disallowance of claims. The statute is concerned solely with priority of claims and does no more nor less than subordinate the tort claim of an owner of securities of the debtor below the priority of other creditor/claimants. But it does *not* result in the disallowance of the subordinated claim.

Nor does defendants' sweeping statement of law that subordination under Section 510(b) "is disallowance of the claim — no distribution or recovery" find any support in the case law. The decisions cited by defendants, *Carrieri v. Jobs.Com Inc.*, 393 F.3d 508, 528 (5th Cir. 2004), *In re Geneva Steel Company*, 281 F.3d 1173 (10th Cir. 2002), *In re WorldCom, Inc.*, 329 B.R. 10, 11-12 (Bankr. S.D.N.Y. 2005), and *In re Walnut Equipment Leasing Co., Inc.*, 1999 WL 1271762, 1999 Bankr. LEXIS 1626 (Bankr. E.D.Pa. 1999), all involved situations in which tort claims subordinated under Section 510(b) to the level of equity received no distribution under the particular debtor's plan because equity received no distribution under the debtor's plan. Of course, it is self-evident that subordination of a tort claim under Section 510(b) to the level of equity may be said to have the same practical effect as disallowance in such a case because the tort claimant gets nothing under the debtor's reorganization or

- 8 -

liquidation plan where there is no value left over for equity after the creditors have been paid their *pro rata* entitlements. Such was the case in all of the decisions relied upon by defendants for their erroneous statement of the law quoted above from page 28 of their brief.

But if the effect of subordination versus disallowance makes no difference in a case where nothing is left for equity (including tort creditors subordinated to the level of equity under Section 510(b) after payment to other creditors), it makes a great deal of difference in a case such as this where the claims of creditors (other than tort claims creditors subordinated under Section 510(b)) do not exhaust the assets in the debtors' estate which are available for distribution.

Defendants' assertion (Brief 29) that "Section 510(b) is not strictly limited to claims allowance for plan distribution purposes" is wrong for two reasons. The word "allowance" is wrong because the statute has nothing to do with claims allowance — it is concerned solely with claims *priority*. If the word "priority" be substituted for "allowance," the statement is still wrong because Section 510(b) is indeed "strictly limited" to priority for "plan distribution purposes." Nothing in Section 510(b) articulates any purpose other than claims priority, and it is not for the courts to read into the statute any purpose or effect other than the precise claims priority which is prescribed in the statute. It may be that the claims priority prescribed in Section 510(b) will have other practical consequences in the context of any particular bankruptcy case, such as those reflected in the decisions cited by defendants in support of their erroneous assertion at page 29 of their brief. But *disallowance* of claims in a case such as this, where there may be assets available for distribution to claims subordinated under Section 510(b), was not provided by Congress in Section 510(b) and may not be decreed by courts in contravention of the statute.

### Conclusion

As stated in the Conclusion of the February 23 Decision, nothing in this Decision is intended to prejudge the facts as they may appear at a trial. I conclude here only that defendants' legal arguments in support of this misnamed motion for summary judgment must be denied because (A) the non-redeeming investors are, in fact and law, creditors of the Bayou Hedge Funds (in addition to being equity investors), and it is appropriate and lawful to assert fraudulent conveyance claims for their benefit,

and (B) Section 510(b) of the Bankruptcy Code subordinates the non-redeeming investors' claims as tort creditors but does not disallow those claims.

Plaintiffs' counsel are directed to prepare an appropriate order and circulate it to defense counsel for approval as to form before submission to this Court.

Dated: White Plains, NY
       August 9, 2007

                                                    /s/ Adlai S. Hardin, Jr.
                                                         U.S.B.J.